Case 24-1192, Eastern District of Missouri, Pinnacle Imports v. Share A Splash Wine Co. Mr. Bierman? That seems like a good name for this case. It is, isn't it? Yeah, Wineman would be better, Your Honor, but I'll take it. May it please the Court, good morning. I'll start off by saying I'm glad I'm not arguing an insurance coverage case because mine is much, much simpler than that. Here, the Court should reverse the District Court's entry of summary judgment against Pinnacle on its claim under the Missouri Franchise Act. The District Court erred when it disregarded or explained away admissible evidence from which a jury could conclude that Pinnacle is a franchise under the Act and not within the exclusion to that definition reserved for commercial relationships that do not contemplate the establishment or maintenance of a place of business within the State of Missouri. Now, under the MFA, Missouri Franchise Act, place of business means a fixed geographical location at which goods, products, or services are displayed or demonstrated for sale. There's no dispute that Pinnacle falls within the statute's primary definition of franchise. That's not at issue here. What's at issue here is whether Pinnacle lost that status because it did not have a place of business in Missouri where it displayed goods or products for sale. There is evidence. There's no undisputed evidence that Pinnacle did not operate such a facility. In fact, there is evidence that it did. And only by disregarding the deposition testimony of Bill Neep and then imposing a new requirement for franchises having no foothold in the statutory definition of franchise did the district court conclude that Pinnacle fell outside that definition. When all the record evidence is viewed in the light most favorable to Pinnacle, and after removing the judicial gloss the district court created and applied to the statutory definition of franchise, it is clear that genuine issues of material fact remain such that summary judgment was erroneously granted. Counsel, do you think focusing on that last sentence of the statute, I find this to be a very interesting and difficult statute, but do you think that the terms in that last sentence and maybe throughout the statute are technical or are we talking about the plain and ordinary meaning of those words? I believe that we're talking about the plain and ordinary meaning of those words. Certainly with respect to the last sentence, yes. So I'm not so sure that's right, actually. So when you're talking about demonstrated, you go to the dictionary and there's a ton of definitions. Some of them are like setting up an experiment. Well, that's obviously not what we have here. Then you have a definition like, and this is in two different dictionaries, demonstrate to show the use of an article to a prospective buyer, which I think it's like a sales rep demonstrating something, or to show or prove to a prospective customer, as by actual operation, the special value or merits of an article or product. The way I read those is those are the technical, those are the business-specific definitions. And so you don't have the benefit. One's from Webster and one's from American Heritage. My real question is, does that change this case? Because I don't think the district court looked at these definitions. I think he basically said, do you have an in-cap, basically, like a store where you display products? But when you have a sales rep, the way the products, there's no display, but the way the products are demonstrated is by bringing people into the office and saying, hey, look at this wine, taste this wine. That's demonstrating the product. So I'm just wondering what your reaction is. Because it's a slightly different argument than you're making. It is, but my reaction is that it doesn't really change my argument. Because if we're going to go with those technical definitions, Pinnacle Imports did do that. When you look at Mr. Neap's testimony, I was about to recite, Mr. Neap's testimony was, in the warehouse itself, all of the products are on display. He then says, I say that, you know, with finger quotation marks. They're there to be pulled by shippers. He then says, have there ever been times when we've had a customer come to our conference room and do what we call a warehouse kick-the-boxes tour, where they go through and choose some wines that they've not seen before that look compelling to them. So what they are doing is demonstrating their products. Do they do a tasting along with that or anything like that? Sure. Evidence of that? Pardon me, Your Honor, I wasn't anticipating this question. When you look at, and this gets into the question of whether the affidavit that was submitted should have been accepted by the court, and I can get into why it should be, because this may be important given your question, Mr. Neap wrote, Pinnacle occasionally hosted current or potential account representatives at its Overland facility for tastings and viewings of certain products, including the brands at issue. So there were demonstrations. So I'll get straight to the question of whether, because I think it's important to you, that affidavit should have been accepted. The argument is that affidavit was a sham affidavit because it contradicted Mr. Neap's testimony. Now, it did not contradict Mr. Neap's testimony, and there are three reasons. The first reason that it didn't contradict Mr. Neap's testimony is that the question that was asked of Mr. Neap that is utilized by the court in order to grant summary judgment was, are any of your products on display there? That was the only question. And Mr. Neap said no. And the court ran with that and said, well, he's admitted that there's no display. Then what happened is that the next question that Mr. Neap was asked was, are any of your products on display for customers anywhere other than what you make trips out to visit? And he responded, when we sell the products, they are in case stacks and on wine lists all over the state. But no, we're a wholesaler. So we can't do business directly with the public. So we don't have displays of that nature. So he was talking specifically about displays of the nature that you would have in a retail establishment, like you said. And, in fact, if they had such displays, they would be violating Missouri laws. Correct, because they can't sell directly to the public. So instead, what Mr. Neap was saying was simple. Yeah, we don't have displays like you're talking about, technical displays like that. We have, in your, I think you would consider this, other technical displays. Or a demonstration, really. And demonstrations and displays. We do kick-the-box tours. And, unfortunately, the district court simply, A, ignored the testimony that I've just read to you about the kick-the-box tours and the displays and the demonstrations. I wonder if it also comes, I mean, you have some other reasons, but I wonder if it also comes from the fact that, and you can tell me if I'm wrong, nobody in this case, everyone's so focused on displays, including the district judge, that everyone seems to have forgotten about the word demonstrate. At least the district court did. Was that litigated below? I mean, you don't have to litigate a specific portion of the statute, but I'm just wondering how much attention was paid to that. There was no attention paid to it, Your Honor, because, really, we didn't consider this an issue. We had Mr. Neap's testimony. His testimony was clear. His testimony was that they take clients on tours. All of his wines are on display. And even if you take this first question, which, do you display, and he says no, that still creates a fact. Mr. Neap had a right at trial to explain why, on one hand, he said no, which I think I've just explained why, and then, on the other hand, when asked, by the way, a completely different question. I mean, that's also important here as to whether he contradicted himself. I don't think he did contradict himself because the question that was asked of him the second time was this, and, interestingly, I think this goes to what you were asking. I asked you earlier about your St. Louis facility and whether there's any place there where you have displayed the products or conducted any sales efforts directly there. I think that goes to the question of demonstrations. And you said there isn't, right? And, Mr. Neap, that's when he responded. In the warehouse itself, all of our products are on display. Then he talked about the box tours where they get to see the wines. They get to see something that they might find compelling, he said, that they haven't seen before. And his affidavit did nothing to contradict any of that. He elaborated. What he meant by see or choose includes tastings. So, no, we did not get into the question of demonstrations, but I think Your Honor has said on an important point, which is, in fact, it was demonstrated. So I think that covers a great deal of my argument. The bottom line here, I would say, is this, Your Honor. It is clear from what I've just explained that Mr. Neap's testimony was, A, discounted, and, B, explained away. And opposing counsel, I'm confident, is going to argue, because they did in their brief, that we are cherry-picking this one sentence out of the opinion where the court said that in the regular course of business, Pinnacle was not displaying goods, demonstrating goods. But that requirement simply is not in the MFA. And if this court were to uphold the district court's decision and say, okay, this is the standard, now you're putting the district courts in the position where they have to decide, well, how much of a demonstration is a demonstration? I mean, Mr. Neap did say it doesn't happen all that often. Acknowledge that. But there's nothing in the statute which says it has to be the predominant way that the wine is sold or that the liquor is sold. It just has to be a way that it is sold. And that's what he testified to. So to put the lower courts in that position and have them have to decide, well, is this sufficient? Was this enough? Did visitors come in often enough? Is it simply because the wine is in a crate? Is that a display or is that not a display? That really shouldn't be within the purview of the district court. So one thing that throws me for a loop, and, again, I'm being hyper-technical as to what this says, which I think we have to do, is the word are, A-R-E, are displayed or demonstrated for sale. And so there's two possibilities with that. One is it's happening continuously over a course of time. Another is it just happens, that that particular thing happens. What do you make of the word are? Because it does seem to suggest, contrary to your argument, that you have to make some assessment of how often, well, one of the definitions does, but you have to make an assessment of how often it actually happens. I understand what you're saying, Your Honor. Obviously my interpretation of are is that they are there to be seen. I don't see how you would get around that. And, frankly, I think that you would be changing the way that the wine and liquor business is done throughout the United States, and especially in Missouri, if you imposed upon the franchisees that obligation. I deal in this industry a lot. I know how it works. It doesn't work that way. And liquor franchises are obviously franchises within the statute, and they handle these things the same way. I mean, Mr. Neap testified. He has a conference room. They bring folks in for, and this is in his affidavit, they will pull wines that are on display in his warehouse, and they will taste them in the conference room. To me, are has to mean in that case that, yes, they are on display there for customers to see how often the customers come in. I don't believe, Your Honor, is relevant to an understanding of the statute. And if there are no more questions, I'd like to preserve the balance of my time. All right. Thank you, Counsel. Thank you. Mr. Novogratki, and I'll let you correct my pronunciation. Very close, Your Honor. Novogratki, the W goes to a V. May it please the Court. Not every vendor-vendor relationship qualifies as a franchise, and Judge Autry correctly found that the distribution agreement between Splash and Pinnacle did not constitute one as a matter of law based upon its construction of the plain language of the Missouri Franchise Act. As this Court has often said, summary judgment is not a disfavored procedure. It's an integral part of the federal rules for the just, speedy, and inexpensive resolution of cases. And so we do focus on that last sentence because that's really where the decision hung itself on. But I believe that whether you look at the technical or plain language of that last sentence, they did not meet the definition of a franchise. And as this Court just recognized in Major Brands v. DeMoss' Jägermeister case, you have to satisfy both the general definition and the specific definition. Well, so help me out then. So American Heritage Dictionary, I think this is number three, but the other two don't work in context. To show the use of an article to a prospective buyer in Webster's third, and we looked at a lot of dictionaries, but these were the two that came up, to show or prove to a prospective customer the special value or merits of an article or product. Now maybe we could talk about the sham affidavit, but if you include what we have here, I don't see how that definition is not satisfied. I may agree with you on display, but I do not see it on demonstration. Well, then we would look to the other words in that last sentence. Fixed, meaning a particular place. Permanent, geographic, a particular place. And location, a particular place. And what opposing counsel doesn't point out is the other probative facts that Mr. Neap testified to that are undisputed, that we go to the customers. In the vast majority of our work, we go to customers. We don't invite customers in. So it's not enough if they do it, let's say, I'm going to make this up, but one out of every ten times the customer comes to them, they go to the conference room, they pull out these boxes of wine, people taste the wine. That's not enough because you think it should be the predominant way they sell the wine. Yes. As often as this Court has looked at the Missouri Franchise Act, it has to make determinations about whether or not you've met a certain burden, like continuity of interest. So there's nothing in the statute that says, well, a certain percentage of sales equals a continuity of interest, but this Court in Missouri Beverages v. Shelton Brothers said 1.16% was not sufficient to constitute a continuity of interest. So there also has to be some type of valuation of the undisputed facts, whether or not that meets the level of a place of business. And if you think of a place of business, it's where business occurs. Well, I'm wondering if that last sentence is not, and I don't know the liquor business, I just don't know, but I wonder if it's aimed at pop-ups. Pop-ups are all over the place right now, and that would be not at a fixed geographical location, and that is what that is aimed at, is you actually have to be in one place. And my understanding is Pinnacle does have a warehouse in one place. They're not a pop-up. They don't move around. They're not transient or anything like that. Maybe you have a different reading of that? Well, it might apply to a pop-up, but I think you have to say, well, why would that sentence be there if it didn't require, as you said, R on display, R demonstrated. And when someone says we present in their place of business for the most part, I would call the Court's attention to the Western District's opinion at Venture Marketing Group versus Premier Specialty Brands. Now, in that case, again, the plaintiff said, I'm a franchise because I go out and I take the defendant's products to retailers, which is really what's happening here. Yes, Pinnacle cannot sell to you and I, but they do go out to the Schnucks, I imagine, and the Dierbergs. They go out to retailers. So in that case, the complaint did not allege that there was a specific place of business. So that case teaches us that just going out to retailers is not sufficient to constitute a franchise under this Act. And that's the judicial construction that I believe this Court has to go through and that Judge Autry did as well. When you look at that affidavit, and as the Court has recognized, a post-deposition affidavit is entitled to very, very close scrutiny. Otherwise, we would never have summary judgment motions because someone could say, well, I said A in my deposition, now I'm going to submit an affidavit that says B. How are they inconsistent? I still can't get over the fact that I think everyone was so focused on display that they ignored the other part of the statute. But, yeah, there's a little more specificity, but are they actually in conflict with one another? Yes. Okay, tell me how. Well, when you look at his post-deposition affidavit as a whole, first he tries to introduce the word franchise into describing the relationship, which he had never said in his deposition. So if we look at the entire tenor of his deposition, it's we don't do things here. We go to the customer. Once in a great while, somebody comes and kicks the boxes. Well, now he says, well, as a matter of fact, no, even though I said we generally don't have customers, we generally don't invite customers to the facility to present. That was his deposition testimony. We present in their place of business. So now he's trying to say, well, no, as a matter of fact, they come to our place of business. And I think that's the contradiction and the revision. Even if the court had considered that, again, we have to have that standard. There has to be some level of activity in order to meet that place of business requirement. And once again, he said occasionally. So I think if you want to give meaning to a place of business where goods are displayed and demonstrated, it has to be more than just an occasional because that doesn't meet the statutory requirement. Counsel, one concern I have with this case, I think, is that one version of the plain meaning of the words of display and demonstrate really make the statute make no sense. Because we know that the legislature specifically included liquor wholesalers who operate from warehouses. And if you interpret those words as requiring some sort of retail type function, it would seem to implicitly then exclude those same wholesalers from the statute. You know, you give with one hand, you take away with the other. We also know that under Missouri law, it's illegal for them to conduct retail sales from those warehouses. So it seems to be you put that all together and the meaning of those words has to be somehow shaped by those other factors, that the legislature wanted wholesalers who operate out of warehouses included in the definition. And we know that they can't sell retail. So what's your reaction to that? That they can't sell to retail accounts. So if they want the Schnucks and the Deerbergs to come to their facility, their fixed place of business, then that's where their franchise business would take place. So then doesn't your argument then depend upon the frequency of that happening? Because there is evidence in the record that it at least happens sometimes. It does depend upon frequency. Just as continuity of interest depends upon more than 1.16% of sales. This court, you have to make some, there has to be some type of valuation of those terms or else everything would be a continuity of interest. No one seems to be arguing that portion of the definition of franchise. Has it been waived? Is it before the court? You know, I would say that the undisputed facts show there was not a continuity of interest based upon the percentages that Judge Autry outlined in his order. And that's a sealed order, so I don't know how much we can say here in front of everyone. But if you look at Judge Autry's opinion, he does go through that. And I know I can at least say that Pinnacle doesn't display, doesn't have share splash on their trucks. They don't wear uniforms. The percentage of sales overall, share splash, was very, very, very small. Almost equal to what was in the Shelton Brothers case. So yes, I think this court could affirm as well that Pinnacle did not provide sufficient probative evidence that there was a continuity of interest between these two companies. And again, the standard for summary judgment, sufficient probative evidence. So that is also a weighing factor. You have to have sufficient evidence. So really, one sentence that says, we occasionally had tastings, I don't think establishes the demonstration. Because you have to have more, because I agree, why else would you have that sentence in there if it didn't require something? But I think it could apply to the retailers, just as the Adventure Marketing case said. It's not enough. It's not sufficient enough for you to go out and visit retailers. You have to show that there is a fixed place of business. And I think, as this court talked about the economic disparities in major brands, that fixed place of business I think is important to show the financial interdependence between a franchisor and a franchisee. In other words, you both have to have skin in the game. You have to have this place where our customers can come and we can see that you're engaged in the franchise business. And that did not occur. So if we don't apply the last sentence, then we're ignoring it. And I don't think that's the correct outcome for this Missouri case. Thank you.  All right, Mr. Bierman, your rebuttal. Just a few moments. First, this issue of the fixed geographical location. That's at the very beginning of the statute. It has nothing to do with whether there are goods displayed there. The question is do you have a fixed geographical location. It's not in dispute. Pinnacle has two of them in Missouri, one in Overland, one in the Kansas City area. So I'm not sure what that argument has to do with what we're talking about today. Second, this entire continuity of interest argument is just simply a red herring. The decision wasn't based on continuity of interest. Yes, continuity of interest, at least one element of the test, looks at percentages, but that's the case law, and that's been the case law for years, and it makes sense. It's part of that analysis. It has to be. How much of an interest do they share? There's a second part of this that Judge Autry didn't get into, but, again, he didn't decide it on that anyway, and that's the amount of investment that the distributor put into the distribution. That's a totally different issue. It has nothing to do with what we're deciding here. Finally, I think I've already made my point as to why the affidavit was not in conflict. I think if you look solely at paragraph 26 of the affidavit, you will see that it does nothing but explain Mr. Kniep's testimony in response to the question that was asked of him as to whether products were on display and essentially sold at his facility. That's all paragraph 26 does. And, again, opposing counsel just said you have to show his quote just now, some level of activity. Mr. Kniep did that. There is some level of activity. If Your Honor likes, demonstrated as opposed to displayed. But his testimony was clear. Customers are invited in. All of his products are on display. And even if you don't look at his affidavit, when he says they choose, right, they come to see something they find compelling and choose them. Well, how do you choose a wine? You choose a wine perhaps by the label, but you choose the wine by tasting the wine. I think it's implied there when he said they come to choose something. Of course it was demonstrated. And then finally, the question of, so why is that sentence in there? Why is that last sentence in there if it doesn't require something? Well, okay, it does require something. And Mr. Kniep testified and Pinnacle demonstrated something, enough certainly that he deserves his day in court and his ability to testify to what exactly Pinnacle does when it invites retailers, not the general public, into its facility to demonstrate and to display its goods. That's all this is. Thank you, Your Honor. Thank you. The case has been submitted and the court will issue an opinion in due course.